[602 NYS2d 384]

GERALD M. GOLL, Individually and as Father and Natural Guardian of JAMES H. GOLL, an Infant, et al., Appellants, v NEW YORK STATE BAR ASSOCIATION et al., Respondents.

First Department, October 12, 1993

## APPEARANCES OF COUNSEL

*Gerald M. Goll,* Garden City *(Ron N. Greenfield* with him on the brief), appellant *pro se,* and for James H. Goll, appellant.

*Eli S. Cohn* of counsel, New York City *(Eugene H. Goldberg* with him on the brief; *McDonough Marcus Cohn & Tretter, P. C.,* attorneys), for New York State Bar Association, respondent.

*Andrew L. Margulis* of counsel, New York City *(Geoffrey W. Heineman* with him on the brief; *Ohrenstein & Brown,* attorneys), for Bertholon-Rowland Corp., respondent.

*Jeffrey D. Chansler,* New York City *(Carmine Tronolone* with him on the brief), for Empire Blue Cross and Blue Shield, respondent.

## OPINION OF THE COURT

KUPFERMAN, J.

Plaintiff is a member of the New York State Bar Association. In September 1986, he subscribed to a so-called Wraparound Plus group health insurance policy sponsored by the Association and obtained coverage for himself, his wife and infant son. The son requires 24-hour home nursing care as the result of a metabolic disorder. Empire Blue Cross and Blue Shield (Empire) cancelled the policy in April 1990 ostensibly for economic reasons inasmuch as the annual premium for a family in the New York City area had increased to almost $12,000 and, as a result, the number of participants in the Wraparound plan decreased from 2,224 in 1987 to approximately 500 at the time of cancellation.

While there had been unlimited private nurse coverage under the cancelled policy, the conversion policy offered to plaintiff provided for reimbursement for only $5,000 per year in private nursing services.

Plaintiff claims that he was originally induced to subscribe by promises made by Bertholon-Rowland (B-R), acting both as his agent and as broker-agent for the State Bar Association and Empire. Assurances were allegedly made by one Joseph Murphy, in charge of B-R's medical insurance department, during the course of four telephone conversations in May and

June of 1986, to the effect that the policy was "stable" and coverage would continue so long as plaintiffs "complied with their obligations", that the plan would never be discontinued against a covered person, and that built-in safeguards prevented the plan premiums from rising dramatically. Plaintiff alleges that he was specifically assured that the plan would not be cancelled in a manner that would leave his family, and specifically his son, without his needed private-duty nursing care benefits. Plaintiff further asserts that he told Mr. Murphy of his desire to leave his present job to enter private practice, and that he therefore did not want to rely upon his employer-provided health insurance coverage.

In addition to the foregoing claimed representations, plaintiff maintains that, before subscribing, Mr. Murphy mailed him the policy brochure which advertised "comprehensive health care plus special measures to keep health care costs in line". Though plaintiff received the brochure, the booklet containing the provisions of the policy was unavailable at the time and plaintiff did not receive such booklet for 8 to 12 months after subscribing; he thus relied completely on Mr. Murphy with respect to the representations regarding coverage and benefits.

During the four years that plaintiff was a subscriber, the premiums quadrupled from approximately $3,500 to $12,000 per annum.

The complaint alleges that, in late 1987 or early 1988, the State Bar Association solicited "rebates, kickbacks and/or bribes" from B-R on all the insurance programs of the Association that B-R placed, including the Empire policy covering plaintiff. The payments were made, it is asserted, in order to avoid the Association's switching to a competing broker; these monies were allegedly needed by the Association for its new State Bar Center in Albany. It is claimed that B-R solicited the Association's cancellation of the Empire policy in order to replace the policy with a new policy that would allow greater rebates to the Association. Plaintiff further asserts that a $200,000 payment from B-R to the Association was also part of the "kickback scheme".

The documentary evidence submitted in support of defendants' motions consists, *inter alia,* of two informal opinions of the General Counsel of the Insurance Department which purport to approve the so-called royalty and administrative services agreements and which, by their own terms, are not binding on any court.

Moreover, given the recent public disclosures regarding the mismanagement of Empire Blue Cross and Blue Shield, including the filing of false reports with New York State regulators as part of a campaign for sweeping changes in State insurance law on the false premise that Empire was unfairly burdened with high-risk customers *(Inquiry By Empire Finds False Data Filed On Finances,* New York Times, Sept. 22, 1993, at 1, col 3; *Empire Audits Show $51 Million Inflated In '89-90 Loss Data,* New York Times, June 20, 1993, at 1, col 1), plaintiff's allegations of bad faith on defendants' part in cancelling the State Bar Association's group medical policy cannot be dismissed out of hand. Defendants' claim that the Association's policy was cancelled in good faith out of economic necessity in light of the sharp rise in premiums to its members is also cast into doubt when the amount of the royalties and administrative services fees paid under the new policy are considered in relation to the relatively small number of subscribers affected by the cancellation. If the latter were divided into the former, the result would seem to be lower premiums for the Association's subscribers.

Likewise, although there may be no fiduciary relationship between the Bar Association and one of its members, it goes without saying that a Bar association should be and, as found in another context, is primarily concerned with the interests of its members *(Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143). In the instant case there is arguably a special relationship of "trust and confidence", which if betrayed is made actionable in tort *(Apple Records v Capitol Records,* 137 AD2d 50, 55). "These socially imposed legal duties are not, however, exclusive to relationships of trust and confidence, but may also arise from special extraneous circumstances and from the 'legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud.' " *(Supra,* at 55, quoting *Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 398.)

As in all contracts, there is an implied obligation of good faith and fair dealing, which is but a recognition by the courts that parties to a contract occasionally have understandings or expectations so fundamental as to obviate the need to negotiate about them *(see, Wieder v Skala,* 80 NY2d 628, 637). Thus, deeming plaintiffs' allegations true for purposes of this motion, it cannot be said on the present record that the causes of action enumerated in the second amended complaint should

be dismissed for legal insufficiency or on the ground that a defense is founded upon documentary evidence.

Also, the IAS Court's dismissal of the second, third and fifth causes of action on CPLR 3016 grounds for lack of specificity was, under the circumstances, a too rigid application of that section *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3016:3). Nor should plaintiffs' claim of damages be deemed premature or speculative where the coverage under the cancelled policy ended at the end of 1991, two weeks after the date of the IAS's Court's decision.

Accordingly, the order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered December 17, 1991, which granted defendants' motions to dismiss the second amended complaint, should be reversed, on the law, and the motions denied, without costs.

Motion by appellants for permission to file a supplemental record and brief is denied as unnecessary inasmuch as this Court had already taken judicial notice of Empire's public disclosures.

ROSENBERGER, J. P., ELLERIN, ASCH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered December 17, 1991, is reversed, on the law, and the motions to dismiss the second amended complaint denied, without costs. Motion by appellants for permission to file a supplemental record and brief is denied as unnecessary inasmuch as this Court had already taken judicial notice of Empire's public disclosures.